Good morning, Your Honors. I wasn't quite ready. I'm not sure I was, either. Now I think we're set. Okay. Good morning once again, Your Honors. Michael Drake for Walter Scott. I'm hoping to reserve about two minutes and I'll try to watch the clock on that. Now, to adopt the warden's position today, this court would have to ignore its own binding case law and rewrite not just one but two statutes. The case law, of course, that I have in mind is Consultant Mr. Sherman, in which this court held that a habeas petition that is the first to challenge a new intervening State judgment, unquote. It's not disputed here that the new intervening judgment corrected Scott's credits or that Scott's petition is the first to challenge that new judgment. As for the statutes, first, of course, there's AEDPA, and on that I'll just quote the Supreme Court in Magwood, quote, both Section 2254B's text and the relief it provides indicate that the phrase second or successive must be interpreted with respect to the judgment challenged, unquote. So to evade that textual and structural focus on State court judgments, the warden would need you to rewrite 2254B. And then you'd also have to rewrite California Penal Code Section 1237.1. That would be necessary to accommodate this idea of the warden floats that Scott had no interest in correcting his custody credits because 1237.1 creates a mechanism for inmates like Scott to correct his credits. There are no exceptions in 1237.1. If California decided that, you know, inmates serving LWOP had no interest in correcting their credits, it could have said so in 1237.1, but it hasn't. It's not just Gonzales, right? We also have Wentzel. Yes. Not to give short shrift to Wentzel, but Gonzales is the more immediately controlling case. Right. And, of course, they flow from Magwood. That's right. The problem is that, as I read the record, your client was late filing a habeas petition. I think it has half a dozen arguments in it, half a dozen claims, I should say. Then he got this correction, and apparently something that is called a new judgment because of the accounting error. And he filed the very same petition that was already deemed tardy. It's really hard for me to see how we can deviate from Magwood and this progeny. It's also really hard for me to imagine that this is what the Supreme Court intended. I hear you relying very heavily on the authorities that we've got that you said I think very forthrightly are binding, but I have to believe that the state's going to get up and say that this is not. It's just an end run around the requirements. So would you like to speak to that now or do you want to speak to it later? I mean, I think I'll wait for the warden to speak to it. I mean, unless you'd like me to. I'm just prescient. Just pretend I've got a crystal ball, because he's got to argue that, and he has in his briefing. So what do we do about that? Isn't that kind of? Two things, Your Honor. I mean, for now. I mean, I have more I could say, lots more I could say about that. But there's two things I'd like to note first, is that in Wentzel, neither Gonzales nor Wentzel talk about the contents of the first-in-time petitions. So we're sort of in the dark. I mean, it may have been the same thing in Wentzel, for instance, which involved a late first petition. The first petition was denied as untimely. Here it was denied as untimely. And I might add, it was denied as untimely in the wake of AEDPA in 1998 because it was 28 days late. But it was late. And, you know, that's a mean deadline that's strictly enforced. Set that aside. It was also the petition in Wentzel was also late. So I'm not sure whether the same claims were filed in Wentzel, but neither Gonzales nor Wentzel discussed that. So I don't think that's grounds for a principled distinction from those cases. But this rule comes out of a scenario where there was a death penalty, a very, very serious case, a death penalty, an error discovered in the state court about balancing the mitigators, I think. And they went back, reimposed the death penalty, affirmed the conviction, reimposed the death penalty. And then there was a new calculation, if you will, a new balancing, aggravators, mitigators. And so it truly seemed there to be crying out for allowing the individual to take another shot at what was truly a new judgment. Right? Right. And isn't the error here very qualitatively different? The correction was an accounting error. At the time your client was sentenced, there was an error, right, about how many days credit for time served he was entitled to. Is that right? That's right. Okay. And I shouldn't be concerned about that different type of error? Well, I mean, I think it's decided by Gonzales. But, I mean, in Magwood, you have ‑‑ I mean, there's some ‑‑ it follows from Magwood. In Magwood, you don't have any practical effect in the new judgment. He got a new judgment. He received the same sentence. And the claim he raised in Magwood was a claim that he could have raised as to the first sentence. So here these are claims that he has raised and he did raise. So, if anything, he was more diligent than the petitioner in Magwood. Is the situation going to be that state by state, depending on rules about what does or does not trigger the entry of a new judgment for whatever reason, for an accounting error or whatnot, state by state, then under Magwood, people would or would not be entitled to file a new second habeas petition? So I think there would be a narrow state by state look at whether there is a new judgment. Right. But what I think the court needs to avoid is a situation where the court is constantly revisiting judgments about whether there's, you know, all the different variables that come in. There are hundreds of variables that could obtain, right? So there's this narrow focus on whether there's a new judgment. But as far as the rest of it, you avoid by adopting this unitary, holistic, categorical rule following the categorical reasoning of Magwood. Of course, your contention is that there is a new judgment in this case, right? Yes, Your Honor. And that it's not our business. How do we know that? How do we know there's a new judgment? Yeah. Just because the clerk entered an amended judgment? Well, there's been a new announcement of the sentence that now includes the custody credits. But it's the same thing the judge would have done, you know, to correct an error. The same procedure would be followed, wouldn't it? I think what's happened here is that the court of appeal has announced a new sentence, How do we know it's not a clerical error? What point does this become? Well, I think Gonzales distinguishes between, I mean, clerical errors are covered by Gonzales. What's not covered are scrivener's errors. So as long as there's, so if there's a correction, if there's an announcement of a sentence, but then the written record of that judgment doesn't correctly reflect that announcement. That's the five or 50 years analogy in the case. Yeah. Uh-huh. That's right. So then you, then that would just be a scrivener's error and that would not be a new judgment. Here, there's a substantive change, even though Gonzales says in footnote 5 that you don't need a substantive change. I mean, if there's a change to the custody credits in the sentence, that's a substantive change to the sentence. It's not nothing. Well, you can say almost any change is a substantive change. The problem is that, you know, at some point, I think as Judge Christian question and infers, you know, it's nothing more than a correction of a clerical error, right? I don't think it's a clerical error, Your Honor. You could say about, you know, computation of a credit for time served. It's a, all that is an arithmetical computation, right? I mean, Gonzales. That's how it is. That's right, Your Honor. It doesn't involve any element of judgment or discretion. I think it's fair to say that, right, it doesn't involve discretion, and I think it's fair to say that it is mathematical, and Gonzales makes that point, mathematical. Gonzales does go farther than Wentzel, and your view is, I think, we're bound by it, because we're a three-judge panel, but to just be clear, it does go farther than Wentzel, and it does allow this, a clerical, not a scrivener's error, but a clerical error, right? I think it, yes, Your Honor. I think it goes further, Gonzales definitely goes further, extends Wentzel, and just clarifies that it does apply to a new judgment that is limited to correcting custody credits. I see my time's running out. Did I interrupt your question? Did I interrupt your? I just need to understand what is the practical effect of this correction of a clerical error. What's the practical effect for your client? So I'm going to answer that directly, if I can just make two points ahead of that. First of all, a practical, engrafting a practical effects test on this would not be consistent with Magwood, because in Magwood there was no practical effect of the judgment. There was a new judgment that had the same sentence, and it had no practical effect on that petitioner. So, and, you know, that follows from Magwood's categorical reasoning about the text of AEDPA. So, second, there is a practical effect here, which is that there's a substantive change to the sentence that at least the petitioner has in his back pocket should California grant the State Parole Board back-end release authority that would be made applicable. So it's a contingent effect, but it's not nothing. And in California I think there's a really non-trivial chance that that would come to fruition because there's been the raft of legislation about youth parole hearings and so on. So there is a real possibility, a live possibility. And so the correction of his judgment in that respect is a practical effect, if contingent. Well, I'm trying to see the practical effect on his sentence at all, but I know it wasn't a resentencing. I know it wasn't a change in issues and, as Judge Christin said, mitigating and aggravating factors and all of the things that go in. No statement of reasons was different. Right. That's right. So there was not actually a physical sentencing. It's a calculation. That's right. You're done all the time. It is purely pure calculation, Your Honor. No question about it. And an erroneous one. Okay. An erroneous one. Well, it was a correction of an erroneous entry of custody. Anything further? No. Thank you, Counsel. Thank you. Good morning. Good morning. May it please the Court, Deputy Attorney General David Wildman for the respondent. We acknowledge Gonzales v. Sherman. It's obviously the latest binding authority from the Ninth Circuit. However, Magwood leaves this an open question whether a mere custody credit correction can constitute an intervening judgment. And Magwood was a very different case than this. In Magwood, the situation only concerned a sentencing hearing. The defendant in that case got a new sentencing hearing before the judge. There were new decisions to be made. That's not the case here with Scott. There was no judicial discretion when his custody credits were recalculated. It's simply a mathematical calculation. It was done wrong the first time, and it was corrected. It has no practical effect on his sentence. He has life without parole. All right. So, you know, I agree with all that, but I don't understand what you're trying to argue because aren't we bound by Gonzales? And isn't Gonzales indistinguishable from this case? Yes, Your Honor. This panel is bound by Gonzales. It's the law of the Ninth Circuit. It's barely distinguishable from this case. This is life without parole. That's 65 to life. There isn't a large practical difference between those two cases. However, this situation with the custody credits is not what Magwood talks about. It's not what Wentzel talks about. Counsel, your problem is Gonzales. Your problem is Gonzales. It goes farther, and we're bound by it. So to Judge Tashima's point, what's your argument? Are you asking us to suggest that this be taken en banc? Because, you know, we do not have the ability to overturn Gonzales. It's a three-judge panel, so we're just looking for what's your argument. Yes, Your Honor. Gonzales is a major problem, obviously. It's binding authority is what it is. We filed the briefs. The rehearing petition was still pending, and that's now been resolved. And Westbrook was pending before the Supreme Court. That's now been denied on cert in January. What's the status of the circuit split? I think no other circuit has addressed the custody credit calculation issue. That's really a unique feature of California law, and it doesn't seem to have come up in any other circuit. So am I right that the Fifth Circuit had a case that came up that they did distinguish, and the other circuits have followed Magwood, but the other circuit case law doesn't involve a fact pattern like this one? I have yet to find a case other than Gonzales and Scott where a circuit court has addressed this kind of fact pattern. Thank you for the answer to that question. So then getting back to the one I didn't let you answer the first time, what are you asking us to do? You've acknowledged that at this point Gonzales is binding. I appreciate it wasn't when you maybe filed your brief, but here we are. Are you asking us to recommend that we take it en banc, or are you asking what are you asking? Well, Your Honor, under Magwood my office still believes this could be a live issue that the United States Supreme Court should one day address, possibly in this case, and we would hope that possibly the Ninth Circuit as a whole would look at this issue again because Gonzales was not an isolated situation. It seems to have come up again, and I have another case pending in district court where the same issue has come up. So it is an issue that is being repeated in the cases. This is probably one of the more extreme examples where the petitioner has a life without parole sentence and the only change is to custody credits, which is very much immaterial to his sentence. It's also problematic because he filed the very same habeas petition and it was deemed untimely. His habeas petition in 1998 was found untimely. His current habeas petition, if you calculate the time from the date of the California Court of Appeals opinion, would still be untimely by two weeks, and so that would probably also fall into untimeliness. Granted, that was not briefed below. We filed a motion to vacate, which only addressed the second or successive petition issue. It didn't address the other issues. Sir, you filed a motion to vacate what? To vacate the magistrate judge's order to respond with a motion dismissed for an answer on the merits, thereby preserving our rights to, if we lost the motion to vacate, file on exhaustion and timeliness and the merits, et cetera. Okay, okay. Judge Ruffrey, did you want to ask a question? Yes, thank you. So did you argue to the California Court of Appeals that Petitioner's Section 1237.1 motion, which is for correction of sentencing credits, was moot in light of his life without parole sentence? No, Your Honor. But could you not have made that argument then? We did not make that argument. It's a simple custody credit calculation. If it's wrong, we ask that it be corrected. There have been cases where we've even done that on our own motion. In this particular case, obviously, it makes very little difference, and it's not uncommon for custody credits to be recalculated many years later. The way it generally works in sentencing court, and it worked in 1991, is that the trial court will ask what the custody credits are, the defense attorney will state a number, and there's usually no further discussion on it, and particularly in a case like this with such a serious sentence, where the custody credits will make no difference at all. Well, in any state, there are multiple opportunities for corrections of custody credits for many reasons. So California seems to be in an almost unique position in allowing this kind of elevated correctional system, which the state sometimes participates in on its own petition. But do you think that you have preserved this particular argument in your briefing? Because Gonzales did come down after the judge made the decision here, did it not? And I don't know that the judge ever had the opportunity to address it in light of Gonzales or any of the progeny. Or if you did, I'm not certain that I find that in the briefing earlier. Well, Gonzales did obviously come out after the state court decision as well as the district court decision, if that's what the court's asking. Well, I'm asking if you had the opportunity to present these arguments in your briefing, because you also say in footnote 8 of your answering brief on page 15 that you state that the correction to petitioner's pre-commitment credits realistically will never have any impact whatsoever on petitioner's life without the possibility of a parole sentence. Does that figure in anywhere? And does that materially change these facts as they were presented in the Gonzales case? Which I agree, it's hard for me to agree to this, but we're just not going to be able to change Gonzales. So if there's a material change in facts, if this case can be distinguished on its facts, can that be done? Well, Gonzales did come out after the district court decision, and we didn't have the benefit of knowing how the Ninth Circuit ruled on it to argue below with respect to Gonzales. The custody credit issue is considered an unauthorized sentence in the state of California. If it's wrong, because that way the court gets to correct it at any time, it's not considered a judicial discretion thing. It is a mathematical calculation, and it's not a rehearing of the entire sentence, and certainly in this case it wasn't. And for those reasons, I would hope that the Ninth Circuit as a whole would take this up, as well as the U.S. Supreme Court. Thank you. I understand this court's bound by Gonzales. Thank you for your argument, counsel. Would you put a minute on the clock, please? I just want to briefly address your concerns about the first petition being right, being proven. So 2244, is it? Yeah, D-1, dealing with the deadline, addresses applications, not claims. So he hasn't filed the same application. He's raised the same claims in a new application. I appreciate that. Okay. Just a technical point. And then I think the warden has conceded, but you can't distinguish. There's no way to distinguish Gonzales based on Elwott, because it says that it doesn't matter whether there's a substantive or I think effectively you can really say it doesn't matter whether there's a practical effect on the judgment. And with that, I'd submit Rohners. Thank you. Thank you both for your helpful argument. We'll take that matter under submission and go on to the next case on the calendar, please.
judges: Tashima, Christen, Rufe